Moncure, J.
Two errors are assigned in this case. The first is the rejection of the plea of non damnificatus. Did the Circuit court err in rejecting that plea? The condition of the bond was for the payment of one *542 fifth of all sums of money which might at any time thereafter be claimed or recovered of, or against, the said William S. Archer &c. According to the rule laid down in Stephen on Pleading, p. 386, that a general mo(^e pleading is often sufficient where the allegation on the other side must reduce the matter to a certainty, the plea of “ conditions performed,” generally, was an admissible plea in this case. But not the plea of non damnificatus. As was said by the Supreme court of New York, in the case of McClure v. Erwin, 3 Cow. R. 313, 332. “ This is a good plea in all cases where the condition is to indemnify and save harmless ; because it answers the condition in terms. But it is good in that case only. The plea should go to the right of action, not to the question of damages. The plaintiff', so far as it depends upon the pleadings, shews his right to recover by setting forth the bond with its condition, and alleging a breach of that condition, either general or special as the case may require. If the defendant by his plea admit that the condition has been broken, he concedes, the plaintiff’s right to recover; and, by not denying the breach assigned, but instead of doing this, interposing the general plea of non damnificatus, he, in effect, admits the breach.”
But if the plea of non damnificatus had been originally admissible in this case, the Court was right in rejecting it at the time it was offered. On the 27th of March 1841 the defendant plead “ conditions performed,” to which the plaintiff replied specially, by three several assignments of breaches. On the 1st of November 1842 the defendant tendered the plea of non damnificatus, in addition to his former plea of “conditions performed,” which was objected to by the plaintiff and rejected by the Court. And thereupon the defendant rejoined to the replication to his former plea. Now wherever the plea of non damnificatus is a good plea, it is because it is in the nature of a plea of per *543 formance; “being used,” as Stephen on Pleading, p. 388, says, “ where the defendant means to allege that the plaintiff has been kept harmless and indemnified, according to the tenor of the condition.” Where then the plea of non damnificatus is a good plea, it is equivalent to the plea of “conditions performed.” And the latter plea having been put in more than eighteen months before the former was tendered, there could have been no necessity for the former. If the former had been also put in, the replication and issue thereon would have been the same as on the plea of “ conditions performed.” The defendant has had every benefit under the issue made up on the plea of “ conditions performed,” which he could have had under the same issue' made up on the plea of non damnificatus. The question involved in the issue was whether the debt decreed to be paid by William S. Archer as administrator of John Archer of Amelia, to the administrator of Judith Archer, was, at the time of pronouncing the decree, a debt due from the estate of John Archer of Chesterfield, or a debt due from the estate of John Archer of Amelia. If the former, then it is certain not only that the condition was broken, but that the plaintiff was damnified to the extent of one fifth of the amount of the said decree.
The other error assigned, is the refusal of the Court to give the instruction asked for on the trial of the cause. That instruction was “ that as John Archer of Chesterfield devised a tract of land for the payment of the debt due Judith Archer, that debt did not create a lien on the personal estate of the testator, unless the land proved insufficient for that purpose.” I think that the question involved in that instruction was an abstract one, and its solution by the Court was not necessary to a proper decision of the case, and might have embarrassed the jury. The only issue was, whether the debt decreed to Judith Archer was, at the time of the decree, *544 doe from the estate of John Archer of Chesterfield, or from the estate of John Archer of Amelia. It was at one time, undoubtedly, the debt of the former. When and how did it cease to be so ? The defendant con-ten^e<^ ^at ^ie devised was the primary fund for the payment of this debt; that it was sold and the proceeds received by the executor; and that when the proceeds were so received, pro tanto at least, the debt to Judith Archer became the debt of the executor. On the other hand, the executor contended that he had paid the first instalment of the purchase money of the land to Judith Archer, but she refused to receive the other two instalments; and he had accordingly applied them to the payment of other debts of his testator’s estate ; had credited them in his executorial account, on which there was a balance due to him by the estate ; and that thus the residue of the debt to Judith Archer was in fact the debt of his testator’s estate; whether the land was the primary fund for the payment of said debt or not. In support of his pretensions, the defendant exhibited the record in the case of Archer's adm’r v. Robertson &c., reported in the name of Robertson v. Archer, 5 Rand. 319. That was a suit brought by William S. Archer, administrator of John Archer of Amelia, against the legatees of John Archer of Chesterfield, to recover a balance alleged to be due by the estate of the latter to the estate of his executor John Archer of Amelia; and to obtain indemnity against any outstanding claims against the said testator’s estate. In that suit the executorial account was settled; the proceeds of the sale of the land devised for the payment of Judith Archer’s claim were credited, and the payment of the first instalment on account of that claim was debited to the estate; and a balance was ascertained to be due to the executor of 3061 dollars and 13 cents ; for proportionable parts of which and interest, a decree was rendered against the legatees respectively. From *545 that decree an appeal was taken, and this Court dismissed the bill as to every purpose, except for the purpose of having proper refunding bonds taken from the legatees or their representatives, to indemnify the estate of John Archer the executor against any sums which had been or might be recovered against the estate of John Archer of Chesterfield since the death of the executor. The Court in its opinion said that the most certain way of obtaining justice in this case is to consider all matters between the executor and legatees, so far as relates to actual receipts and disbursements by the executor up to the time of his death as finally closed” &c. In the account of these receipts and disbursements, we have seen that while the whole purchase money of the land was credited to the estate, the amount of the first instalment only was charged as having been paid to Judith Archer. The balance of her claim was reported as an outstanding claim against the estate, and no other outstanding claim was reported. The eifeet of the decision of this Court was to confirm the settlement of the executorial account, (except that the balance reported to be due by the estate to the executor was extinguished ;) and of course to leave the balance due to Judith Archer an outstanding debt of the estate. The main, if not the only, object of requiring a refunding bond doubtless was to provide indemnity against that debt, for which a suit was then pending, and, ten years thereafter, a decree was rendered against William S. Archer administrator of John Archer of Amelia. There is nothing in that decree which can prejudice the right of William S. Archer to recover on the refunding bonds of the legatees of John Archer of Chesterfield. The Court declined giving a decree over against them, expressly on the ground that the remedy was at law on the refunding bonds.
The counsel for the appellant also contended that the opinion of the Circuit court set forth in the second *546 bill of exceptions taken on the trial of the case was erroneous. After the plaintiff had offered in evidence the bond on which the suit was instituted, and the record in the case of Archer’s adm’r v. Archer’s adm’r & als.; and the defendant had offered in evidence the record in the suit of Archer’s adm’r v. Robertson & als. ; (which bond and records are inserted in the bill of exceptions;) the plaintiff offered in evidence an execution and the return thereon, issued in the former suit; to which execution going in evidence to the jury the defendant objected ; but the Court overruled the objection and permitted the execution to go as evidence to the jury; to which opinion of the Court the defendant excepted. The execution is not inserted in the bill of exceptions. It is true, as a general rule, that when an exception is taken to the admission of evidence, its admissibility must appear upon the record, or the judgment will be reversed. And it is also true that where the evidence is documentary, the insertion of the document in the bill of exceptions is generally the best mode of shewing its admissibility. But the insertion of the document in the bill of exceptions is not necessary, if its admissibility otherwise appears upon the record. The case of Hairston v. Cole, 1 Band. 461, was relied on in the argument. But that case materially differs from this. The opinion of the Court in that case is very short, and is in these words, “ the statement in the bill of exceptions that a manuscript jourporting to be a copy of an act of the general assembly of Virginia, entitled an act 8pc., is too imperfect to enable the Court to pronounce any opinion thereon, it not being stated that the said copy was authenticated and how authenticated, nor is the said transcript set out in the bill of exceptions. The judgment is therefore reversed and the cause remanded for a new trial.” There it did not appear on the record that the manuscript purporting to be *547 a copy &c., was duly authenticated. If it had so appeared, it is obvious from the language of the Court, that the said manuscript would have been considered admissible evidence. Its relevancy to the matter in controversy, seems not to have been questioned; and was probably apparent on the record. Whether it was a duly authenticated copy or not, appears to have been the only question on which its admissibility depended. But here the original execution and return thereon, and not a copy, much less a manuscript purporting to be a copy, were offered in evidence, and the only question on which their admissibility depended was as to their relevancy. Were they relevant ? I think they were. The suit was brought by a personal representative, on a refunding bond, for a just proportion, being one fifth of a debt of John Archer of Chesterfield that had been recovered against the plaintiff. The record of the suit in which the recovery had been obtained was offered in evidence by the plaintiff, without objection from the defendant. The execution on the decree rendered in that suit and the return thereon, were then offered in evidence by the plaintiff, and were objected to ; but no ground of objection is stated. The record of the suit being admissible, indeed necessary, evidence in the case, it seems to follow, as a matter of course, that the execution and return, which are matters of record, and in some sense at least a part of the record of the suit, are also admissible, if not necessary evidence in the case, to shew whether the amount of the decree was paid or not, and what was the amount, if paid. The objection in this case must be regarded as a general objection to the admissibility of an execution and return in such a case without reference to any particular ground of objection; and so regarded, it was properly overruled. If there had been any such ground of objection in this case, it behooved the exceptant to set it forth; and not having done so, it is fair to presume that none existed.
*548 The counsel for the appellant also contended that the Circuit court should have rendered judgment for the defendant, non obstante veredicto ; or, at least, to have awarded a repleader; on the ground that the breaches assigned m the replication were insufficient, and the issue on which the verdict was found was immaterial. It was contended that the condition of the bond, properly construed, was referable only to any recovery which might be had against William S. Archer as the representative of John Archer of Chesterfield. And that the recovery in this case as set out in the replication and shewn by the record therein vouched, being a recovery against him as administrator of John Archer of Amelia, though on account of assets received by the latter as executor of John Archer of Chesterfield, the condition was not broken. I think the condition of the bond refers to such a recovery as is shewn by the replication and record; and that the bond was intended, and properly so, to indemnify the estate of John Archer of Amelia against any recovery which might be had against it in respect of the assets of his testator by him received and distributed among the legatees. The testator had been long since dead, and his estate fully administered by his executor. There was no occasion for an administrator de bonis non, for there were no remaining assets to be administered. If there were any outstanding creditors, their recourse would properly be against the estate of the executor, who as to them had committed a devastavit; and whose representative, in the event of a recovery against him by any such creditors, should have recourse over against the legatees for whose benefit the devastavit was committed. The bond was intended to provide for that recourse against the legatees. William S. Archer the representative of the executor, in effect if not in form, represented that portion of the estate of the testator for which the estate of the executor was responsible to the creditors of the testator; and the de *549 cree of Judith Archer before mentioned, was a recovery against William S. Archer as representing the estate of John Archer of Chesterfield within the meaning of the bond. I think the breaches, or at least the second and third of them, were well assigned, and that the issue was material.
I am for affirming the decree.
The other Judges concurred in the opinion of Judge Moncure.
Judgment affirmed.